UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Tanisha M.,[1]

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

23-CV-0231-LJV
DECISION & ORDER

---

On March 16, 2023, the plaintiff, Tanisha M. ("Tanisha"), brought this action under the Social Security Act ("the Act").  Docket Item 1.  She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that she was not disabled.[2]  *Id.*  On July 28, 2023, Tanisha moved for judgment on the pleadings, Docket Item 10; on August 25, 2023, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 12; and on September 7, 2023, Tanisha replied, Docket Item 13.

---

[1] To protect the privacy interests of Social Security litigants while maintaining public access to judicial records, this Court will identify any non-government party in cases filed under 42 U.S.C. § 405(g) only by first name and last initial.  Standing Order, Identification of Non-Government Parties in Social Security Opinions (W.D.N.Y. Nov. 18, 2020).

[2] Tanisha applied for Security Income ("SSI"), which is paid to a person with a disability who demonstrates financial need.  42 U.S.C. § 1382(a).

For the reasons that follow, this Court denies Tanisha's motion and grants the Commissioner's cross-motion.[3]

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id*. This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (alterations omitted) (quoting *Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The substantial evidence standard means once an ALJ finds facts, [the court] can reject those facts only if a reasonable fact finder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (internal quotation marks and citation omitted) (emphasis in original); see *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) ("If evidence is susceptible to

---

[3] This Court assumes familiarity with the underlying facts, the procedural history, and the decision of the Administrative Law Judge ("ALJ") and refers only to the facts necessary to explain its decision.

2

more than one rational interpretation, the Commissioner's conclusion must be upheld."). But "[w]here there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

**I.     THE ALJ'S DECISION**

On December 22, 2022, the ALJ found that Tanisha had not been under a disability since filing her protective application for SSI on January 8, 2018. *See* Docket Item 7 at 706. The ALJ's decision was based on the five-step sequential evaluation process under 20 C.F.R. §§ 404.1520(a) and 416.920(a). *See id.*

At step one, the ALJ found that Tanisha had not engaged in substantial gainful activity since applying for benefits. Docket Item 7 at 695. At step two, the ALJ found that Tanisha suffered from several severe, medically determinable impairments: "asthma; HIV; peripheral neuropathy; obesity; left leg peroneal tendinitis with numbness; migraine; left shoulder rotator cuff tear; patellofemoral pain syndrome; major depressive disorder; and adjustment disorder." *Id.*

At step three, the ALJ found that Tanisha's severe, medically determinable impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See id.* at 696-98. More specifically, the ALJ found that Tanisha's physical impairments did not meet or medically equal listing 1.18 (abnormality of a major joint in any extremity), 3.03 (asthma), 11.14 (peripheral

3

neuropathy)*,* and 14.11 (human immunodeficiency virus infection)*.  Id.* at 696-97.  Likewise, he found that Tanisha's mental impairments did not meet or medically equal listing 12.04 (depressive, bipolar, or related disorders)*.  Id.* at 697.  In assessing Tanisha's mental impairments, the ALJ found that Tanisha was: (1) mildly impaired in understanding, remembering, or applying information; (2) mildly impaired in interacting with others; (3) moderately impaired in concentrating, persisting, or maintaining pace; and (4) moderately impaired in adapting or managing herself.  *Id.* at 697-98.

The ALJ then found that Tanisha had the residual functional capacity ("RFC")[4] to "perform sedentary work" except that:

> [Tanisha] can frequently operate hand controls, reach, push, pull, handle, finger, and feel with both upper extremities.  She can occasionally push or pull, or operate foot controls[,] with both lower extremities.  She can occasionally kneel, crouch, stoop, balance, and crawl, as defined in the Selected Characteristics of Occupations of the DOT, and can occasionally climb stairs and ramps.  She can never climb ladders, ropes[,] and scaffolds, and can never be exposed to unprotected heights and moving mechanical parts.  She can have occasional concentrated exposure to atmospheric conditions, as defined in the Selected Characteristics of Occupations of the DOT.  She can tolerate occasional exposure to extreme heat, extreme cold, and vibration.  In addition, she can understand, carry-out, and remember simple instructions, and use judgment to make simple work[-]related decisions.  She can deal with occasional changes in a routine work setting.  She cannot perform work requiring a specific production rate, such as assembly line work or work that requires hourly quotas.

*Id.* at 698.

---

[4] A claimant's RFC is the most "an individual can still do despite his or her limitations . . . in an ordinary work setting on a regular and continuing basis."  SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996).  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  *Id.*; *see Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999).

4

At step four, the ALJ found that Tanisha had no past relevant work. *Id.* at 704. But given Tanisha's age, education, and RFC, the ALJ found at step five that Tanisha could perform substantial gainful activity as a final assembler, dowel inspector, or bonder machine tender. *Id.* at 705; *see Dictionary of Occupational Titles* 713.687-018, 1991 WL 679271 (Jan. 1, 2016); *id.* at 669.687-014, 1991 WL 686074 (Jan. 1, 2016); *id.* at 726.685-066, 1991 WL 679631 (Jan. 1, 2016). Therefore, the ALJ found that Tanisha had not been under a disability or entitled to SSI since her application was filed on January 8, 2018. *See* Docket Item 7 at 705.

## II.     ALLEGATIONS

Tanisha argues that the ALJ improperly assessed several opinions in the record. First, she argues that the "ALJ's failure to credit" the opinion of Yu-Ying Lin, Ph.D., "over" the opinion of L. Haus, Psy.D., "was a harmful error." Docket Item 10-1 at 21. Second, she argues more generally that the ALJ "made errors evaluating almost every medical opinion of record." *Id.* at 26. For the reasons that follow, this Court disagrees.

## III.    ANALYSIS

An ALJ must "weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (summary order); *accord Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022). But that does not mean that the RFC needs to "perfectly correspond with any of the opinions of medical sources cited in [the ALJ's] decision," *Matta*, 508 F. App'x at 56, or even be based on opinion evidence, *see Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. 2019) (summary order). As long as the ALJ considers all the medical evidence and appropriately analyzes the medical opinions, an RFC consistent with the record is not

5

error.  *See* 20 C.F.R. §§ 404.1545, 416.945; *see also Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that remand is not necessary "[w]here an ALJ's analysis at Step Four regarding a claimant's functional limitations and restrictions affords an adequate basis for meaningful judicial review, applies the proper legal standards, and is supported by substantial evidence").

### A.  ALJ'S ANALYSIS OF DRS. LIN AND HAUS

Tanisha first argues that the ALJ erred by crediting the opinion of Dr. Haus, who did not examine her, more than the opinion of Dr. Lin, who did examine her.  Docket Item 10-1 at 21-22.  This Court disagrees.

On February 14, 2018, Dr. Lin examined Tanisha and opined that she was mildly limited in sustaining concentration and performing tasks at a consistent pace and in understanding, remembering, and applying complex directions and instructions, and moderately limited in regulating emotions, controlling behaviors, and maintaining well-being.  Docket Item 5 at 406-07.  Dr. Lin concluded that Tanisha's psychiatric problems "do[] not appear significant enough to interfere with [her] ability to function on a daily basis."  *Id.* at 407.

The ALJ found Dr. Lin's opinion "less persuasive," as it is "supported by exam findings showing a dysthymic mood, coherent thoughts, mildly impaired attention and concentration due to nervousness, mildly impaired memory skills, and average intellectual functioning."  Docket Item 7 at 703 (citing Docket Item 5 at 405-06).  The ALJ additionally noted that the "opinion is consistent with the overall evidence in the case showing depression and anger issues over her HIV diagnosis and other family abuse treated with medication."  Docket Item 7 at 703 (citing *id.* at 289).

6

On March 14, 2018, Dr. Haus completed a mental RFC assessment and opined that Tanisha was moderately limited in understanding, remembering, and carrying out detailed instructions; maintaining attention and concentration for extended periods; accepting instructions and responding appropriately to criticism from supervisors; and responding appropriately to changes in the work setting. Docket Item 5 at 88-90. Dr. Haus determined that Tanisha "can perform unskilled, entry level work on a sustained basis." *Id.* at 90.

The ALJ found Dr. Haus's opinion "somewhat persuasive," as it is "supported by the reviewer's detailed summary and analysis of the evidence he reviewed" and "consistent with the other evidence in the record, including records submitted after his assessment." Docket Item 7 at 702. The ALJ also opined that the opinion "is consistent with the overall evidence in the case showing depression and anger issues over her HIV diagnosis and other family abuse treated with medication." *Id.* (citing *id.* at 289).

As an initial matter, "[a]n ALJ is entitled to rely on the opinions of both examining and non-examining [s]tate agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability." *Bump v. Comm'r of Soc. Sec.,* 2016 WL 6311872, at *4 (N.D.N.Y. Oct. 28, 2016); *see Felicia A. o/b/o O.A. v. Comm'r of Soc. Sec.,* 2024 WL 3696293, at *6 (N.D.N.Y. Aug. 7, 2024) ("As a threshold matter, the opinions of consultative examiners and state agency non-examining consultative physicians can constitute substantial evidence in support of the ALJ's decision."); *Roane v. O'Malley,* 2024 WL 1357845, at *11 (S.D.N.Y. Mar. 29, 2024) ("[W]hen supported by evidence in the record, the opinion of a nonexamining physician can also constitute substantial evidence."). Furthermore, "it is not for the

7

[c]ourt to reweigh the evidence, as it is the ALJ's duty to resolve conflicts among medical evidence in the record." *Serena B. v. Comm'r of Soc. Sec.,* 2024 WL 3822808, at *6 (W.D.N.Y. Aug. 15, 2024) (citations omitted). So crediting the opinion of a physician who did not actually examine Tanisha was not error.

Tanisha also argues that even "if the ALJ could have credited Dr. Haus over Dr. Lin, he still needed to explain why he did not account [for] Dr. Lin's limitations that were supposedly supported by and consistent with the record." Docket Item 10-1 at 22. But the ALJ is not required to discuss every shred of record evidence in reaching a conclusion; rather, the ALJ must articulate how the disability determination is supported by substantial evidence and provide an explanation that allows for meaningful review on appeal. *See Brault,* 683 F.3d at 448 ("Although required to develop the record fully and fairly, an ALJ is not required to discuss every piece of evidence submitted." (citation omitted)). The ALJ did just that, and Tanisha's arguments amount to no more than a disagreement with how the ALJ weighed the opinion evidence.

Moreover, and perhaps most important, Dr. Lin's findings are not inconsistent with the ALJ's RFC determination. Indeed, by limiting Tanisha to making simple work-related decisions; understanding, carrying-out, and remembering simple instructions; and working with only occasional changes in a routine setting, *see* Docket Item 7 at 698, the ALJ addressed Dr. Lin's findings of mild and moderate mental limitations, *see Benjamin C. v. Comm'r of Soc. Sec.,* 2022 WL 16571699, at *10 (N.D.N.Y. Nov. 1, 2022) ("By limiting plaintiff to unskilled work requiring only simple, routine tasks and simple work-related decisions, the ALJ accounted for the functional limitations associated with plaintiff's difficulties with concentration, pace, and social interaction.")

(citations omitted); *Mangual v. Comm'r of Soc. Sec.,* 600 F. Supp. 3d 313, 319 (S.D.N.Y. 2022) (noting that a "moderate limitation . . . in 'regulating emotions, controlling behavior, and maintaining well-being,' was adequately addressed by [the ALJ's] RFC limitation . . . to 'simple, repetitive, [and] routine tasks'"); *Zabala v. Astrue*, 595 F.3d 402, 407 (2d Cir. 2010) (affirming ALJ's decision that claimant could perform prior unskilled work where "[n]one of the clinicians who examined [the claimant] indicated that she had anything more than moderate limitations in her work-related functioning and most reported less severe limitations."). And it bears repeating that Dr. Lin found Tanisha's psychiatric problems not "significant enough to interfere with [her] ability to function on a daily basis." *Id.* at 407. So even if the ALJ gave more credit to that opinion as Tanisha suggests he should have, it would not have changed the result.

In sum, this Court cannot and will not second guess the ALJ's decision to credit the opinion of Dr. Haus more than the opinion of Dr. Lin. But even if the Court did so, any error would have been harmless.

### B. TREATING PHYSICIANS' OPINIONS

Tanisha also argues that the ALJ erred in finding all of the opinions of her treating sources "less persuasive" or of "limited persuasiveness." Docket Item 10-1 at 22. In support of that assertion, Tanisha first argues that the ALJ improperly rejected the opinion of Juliana Wu, M.D. *Id.* at 23.

On September 10, 2018, Dr. Wu spoke with Tanisha and noted that she reported "difficulty walking her daughter to the bus stop due to dyspnea." Docket Item 6 at 156. A month later, Dr. Wu wrote a letter noting that Tanisha's "medical problem [] may limit her ability to stand or work for a prolonged period of time for the next [three] months."

9

*Id.* at 161.  On December 28, 2018, Dr. Wu completed a physical assessment for determination of employability for the Monroe County Department of Human Services, Docket Item 5 at 469-72, opining that Tanisha was unable to stand for long periods before experiencing shortness of breath and that her condition was expected to last roughly three months, *id.* at 470.  But Dr. Wu determined that Tanisha nevertheless could work for up to forty hours a week with reasonable accommodations.  *Id.*

The ALJ found Dr. Wu's opinions "less persuasive," reasoning that "no medical evidence was provided to support these symptoms and, furthermore, the record as a whole demonstrates [Tanisha] has greater [sic] than the extreme limitations presented in this assessment allow."  Docket Item 7 at 702.  The ALJ additionally noted that "statements as to [a] claimant's ability to work are administrative findings dispositive of a case that require familiarity with the Social Security Regulations and the legal standards set forth therein."  *Id.*

As an initial matter, Dr. Wu noted that Tanisha's limitations could be expected to last for three months, Docket Item 5 at 470, a period less than what is relevant under the regulations, *see* 42 U.S.C. § 1382c(a)(3)(A) (a claimant must demonstrate that . . . [his or her] medically determinable impairment . . . has lasted or can be expected to last for a continuous period of not less than twelve months).  What is more, even with those limitations, Dr. Wu found that Tanisha still could work—up to forty hours a week—with reasonable accommodations.  Docket Item 5 at 470.  And the RFC limiting Tanisha to sedentary work is not inconsistent with Dr. Wu's opined limitations.[5]  *See DePriest v.*

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of

*Comm'r of Soc. Sec.,* 448 F. Supp. 3d 279, 286 (W.D.N.Y. 2020) (claimant's need to avoid prolonged standing and walking consistent with the ability to perform sedentary work).  So even if the ALJ erred in discounting Dr. Wu's opinion and should have given it more weight as Tanisha suggests, any error was harmless.

Tanisha also argues that the ALJ erred in finding the psychiatric opinion of Prakash Reddy, M.D., "less than persuasive."  Docket Item 10-1 at 23.  More specifically, she faults the ALJ for finding that there was no evidence supporting Dr. Reddy's opinion that Tanisha would miss two days of work each month without "point[ing] to what evidence he was looking for—or what evidence undermined that conclusion."  *Id.* at 24.

On January 16, 2020, Dr. Reddy completed a mental treating source statement, opining that Tanisha's "inability to regulate her mood, anger, and impulse control may cause her to be off-task and/or absent" for about two days per month.  Docket Item 7 at 611.  But Dr. Reddy also found that although Tanisha "struggles with impulse control [and] manag[ing her] mood, she is still able to perform [the] routine tasks required for employment."  *Id.* at 612.

The ALJ found Dr. Reddy's opinion "less persuasive" because "[t]here is no evidence in the file that indicates that [Tanisha] had limitations that would cause her to be off work two days per month."  Docket Item 7 at 702.  But the ALJ also noted that the opinion "is somewhat consistent with [Tanisha's] current [RFC] limiting her to sedentary work that has no production rate and limited social interactions."  *Id.*

---

walking and standing if often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 416.967(a).

11

Tanisha argues that by finding Dr. Reddy's opinion consistent with the RFC, the ALJ employed "circular logic"—finding support for a medical opinion by citing the RFC. Docket Item 10-1 at 23. But that misreads the ALJ's decision. The ALJ did not find that Dr. Reddy's opinion was supported by the record because it was consistent with the RFC; rather, the ALJ suggested that the RFC was supported by the record because it was "somewhat consistent" with Dr. Reddy's opinion. And while the ALJ could have been clearer by choosing different words, that does not equate to error. *Rucker v. Kijakazi,* 48 F.4th 86, 100 (2d Cir. 2022) ("The ALJ's decision in this case is clear, but even if it were not, we must uphold even a decision of less[-]than[-]ideal clarity if the agency's path may reasonably be discerned.") (internal citations and quotations omitted).

Tanisha also says that the ALJ's statement that there was no evidence in the file indicating that she would be off work two days a month was conclusory because the ALJ did not point to what evidence he was looking for. Docket Item 10-1 at 24. But the ALJ obviously was looking for evidence to support Dr. Reddy's conclusion that Tanisha might be be "off-task and/or absent" from work about two days per month. Docket Item 7 at 702 (citing *id.* at 611 (Dr. Reddy's opinion)). Tanisha cites nothing in the record to support that unsupported conclusion. *Smith v. Berryhill,* 740 F. App'x 721, 726 (2d Cir. 2018) ("Here, Smith had a duty to prove a more restrictive RFC, and [he] failed to do so."). And as noted above, while Dr. Reddy said that Tanisha "*may* . . . be off-task or absent" about two days a month, he also explicitly opined that "she is still able to

12

perform [the] routine tasks required for employment." Docket Item 7 at 611-12 (emphasis added).[6]

Tanisha also argues that the ALJ gave "deeply flawed" reasons for discounting multiple opinions in the records of the Monroe County Department of Human Services. Docket Item 10-1 at 24. More specifically, she asserts that "it was a factual error for the ALJ to reject th[o]se opinions for lack of supporting medical evidence" and that the ALJ should have considered the "opinions in concert with each other." Id. at 25.

The Court has reviewed the opinions at issue and the ALJ's evaluation of those opinions, and the Court finds that the ALJ's assessments are appropriate and supported by the record. For example, the ALJ correctly noted that Karl Eurenius, M.D., opined that Tanisha could work up to forty hours per week with reasonable accommodations, and the ALJ incorporated the necessary reasonable accommodations into the RFC. See Docket Item 7 at 703 (citing Docket Item 5 at 255-59). Likewise, the ALJ correctly noted that Melissa Shoemaker, LCSW, opined that Tanisha had moderate mental limitations that were expected to last three months, id. (citing Docket Item 5 at 474-77), and that Tammy Harcleroad, FNP, opined that Tanisha was limited due to knee pain and dyspnea. Id. (citing Docket Item 5 at 479-82). Finally, the ALJ correctly referred to opinions from Shayla Chandler, LMHC-P, and Kelly Murell, LCSW, who both opined that Tanisha had no more than moderate mental limitations. Id. (citing Docket Item 5 at 665-68, Docket Item 6 at 633-46, 651-66, 669-81).

---

[6] As noted above, the ALJ was "not required to discuss every piece of evidence submitted" to formulate an RFC supported by substantial evidence. Brault, 683 F.3d at 448.

The ALJ considered all those opinions from the Monroe County Department of Human Services, found their persuasive value to be limited, but nevertheless noted that the RFC largely incorporated their findings. Docket Item 7 at 703. For example, the ALJ noted that "[m]any of the assessments indicate that [Tanisha] could work 40 hours with reasonable accommodations and are consistent with the overall medical records in the case as well as [Tanisha's] RFC limiting her to sedentary work." *Id.* (citing Docket Item 5 at 252). In fact, as noted above, Dr. Eurenius opined that Tanisha could work forty hours a week with accommodations, Docket Item 5 at 255-59; FNP Harcleroad opined that Tanisha could sit for more than four hours per day, *id.* at 482; and Ms. Shoemaker, Ms. Chandler, and Ms. Murell opined that Tanisha had only moderate mental limitations, *id.* at 474-77, 665-68; Docket Item 6 at 633-46, 651-66, 669-81. As the ALJ correctly noted, Docket Item 7 at 703, the RFC accounted for those accommodations and limitations, *id*. at 698 (RFC limiting Tanisha to sedentary work and simple routine tasks).

The ALJ also noted that the "assessments as to [Tanisha's] ability to work or not work for periods of time are administrative findings dispositive of a case that require familiarity with the Social Security Regulations and the legal standards set forth therein. As such, they are issues reserved for the Commissioner." *Id.* Although Tanisha takes issue with the ALJ's discounting the opinions because they were made outside the Social Security context, Docket Item 10-1 at 25, the ALJ did not err in noting that the issue of whether a claimant is disabled is a decision reserved for the Commissioner, *see* 20 C.F.R. § 404.1504 ("Because a decision by any other governmental agency or nongovernmental entity about whether you are disabled . . . is based on its rules, it is

14

not binding on us[.]"). "Accordingly, the ALJ was permitted to find—as he did—that the temporary impairment determinations made by [Tanisha's] doctors were not binding." *Sherwood v. Kijakazi,* 2022 WL 19406585, at *16 (S.D.N.Y. Nov. 23, 2022); *see also Lohnas v. Astrue,* 510 Fed. App'x 13, 14-15 (2d Cir. 2013) ("Because the Commissioner is not bound by another agency's disability determination, and because the Commissioner's decision was supported by substantial evidence, any alleged failure by the ALJ to consider fully the disability determination by the Department of Veteran Affairs does not affect our decision to affirm.").

Finally, it is clear to this Court that he ALJ accounted for Tanisha's physical and mental limitations by carefully crafting an RFC that incorporated those limitations. For example, the RFC accounted for Tanisha's physical limitations "by limiting her to work at the sedentary exertional level, with[] no more than occasional kneeling, crouching, stooping, balancing[,] and crawling; no more than occasional climbing of stairs and ramps; no more than occasional exposure to vibration; never climbing ladders, ropes, and scaffolds; and no exposure to unprotected heights and moving mechanical parts." Docket Item 7 at 701. Likewise, the ALJ considered "the combined effect of all of [Tanisha's] pain and side effects from medication as well as [her] mental impairments," and therefore limited her to work that involved "understanding, carrying out, and remembering simple instructions and making simple work-related decisions." Docket Item 7 at 704 (citing Docket Item 5 at 326-408, 486-663).

And that RFC determination is well supported not only by the opinion evidence addressed above, but by several other opinions in the record as well. For example, R. Pradhan, M.D., found that Tanisha could occasionally kneel, crouch, stoop, balance,

and crawl; could occasionally climb ladders, ropes, scaffolds, ramps, and stairs; and should avoid moderate exposure to fumes, odors, and gases. Docket Item 5 at 86-87. That is consistent with the RFC's limiting Tanisha to occasionally kneeling, crouching, stooping, balancing, crawling, and climbing stairs and ramps, and occasional exposure to atmospheric conditions, Docket Item 7 at 698. In fact, by finding that Tanisha "can never climb ladders, ropes[,] and scaffolds," the RFC is even more restrictive than Dr. Pradhan opined. Likewise the opinion of Alan Chu, D.O., that Tanisha had mild limitations in prolonged standing and walking and moderate limitations in squatting and kneeling, Docket Item 5 at 412, is consistent with the RFC's limiting Tanisha to sedentary work, Docket Item 7 at 698.

And as already noted, Dr. Haus's opinion that Tanisha had mild limitations in understanding, remembering, and applying complex directions and instructions and in sustaining concentration and performing a task at a consistent pace, Docket Item 5 at 81, supports an RFC that limits Tanisha to understanding, carrying out, and remembering only simple instructions, dealing with only occasional changes in a routine work setting, and not performing work with quotas or that required a specific production rate, Docket Item 7 at 698. Those opinions alone are substantial evidence sufficient to support the ALJ's findings. *See Snyder v. Comm'r of Soc. Sec.,* 2023 WL 1943108, at *2-3 (2d Cir. Feb. 13, 2023) ("[M]edical records, medical opinions, and other opinion evidence . . . provide[ ] substantial support for the ALJ's conclusion.").

In sum, Tanisha's arguments boil down to a disagreement with the ALJ's weighing of the evidence, but it is "not the function of this Court to re-weigh evidence or consider *de novo* whether [Tanisha] is disabled." *See Teena H. o/b/o N.I.K. v. Comm'r*

*of Soc. Sec.,* 521 F. Supp. 3d 287, 292; *see also Pellam v. Astrue,* 508 f. App'x 87, 91 (2d Cir. 2013) ("We think that Pellam is, in reality, attempting to characterize her claim that the ALJ's determination was not supported by substantial evidence as a legal argument in order to garner a more favorable standard of review.").  Because the ALJ was "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole," *Matta,* 508 F. App'x at 56, and because the ALJ did just that, the ALJ's RFC determination was supported by substantial evidence, and this Court will not second guess it.

## **CONCLUSION**

The ALJ's decision was not contrary to the substantial evidence in the record, nor did it result from any legal error.  Therefore, and for the reasons stated above, Tanisha's motion for judgment on the pleadings, Docket Item 10, is DENIED, and the Commissioner's cross-motion for judgment on the pleadings, Docket Item 12, is GRANTED.  The complaint is DISMISSED, and the Clerk of Court shall close the file.

SO ORDERED.

Dated: May 15, 2024
       Buffalo, New York

*Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE